IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL A. JARBECK,<br><br>Defendant. | Case No. 1:21-MJ-30 |

AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT

I, Christopher Sims, being duly sworn, state the following:

1. I am a Special Agent with the Coast Guard Investigative Service (CGIS), and have been since 2011. Pursuant to 14 U.S.C §525, CGIS Special Agents have the statutory authority to conduct criminal investigations, make arrests without a warrant, and execute and serve any warrant or other process issued under authority of the United States. My responsibilities include criminal investigations involving United States Coast Guard (USCG) active duty members and civilians, as well as external investigations involving violations of federal law with a nexus to the USCG and/or USCG interests. I have completed multiple training courses including the Criminal Investigators Training Program, Special Agent Basic Training Program, Procurement Fraud Investigation Training Program, Economic Crimes Investigation and Analysis, among other courses at the Federal Law Enforcement Training Center, and have investigated numerous allegations of crimes including theft, larceny, fraud, sexual assault, assault, illicit drug use.

2. I am a Certified Fraud Examiner through the Association of Certified Fraud Investigators, and have a Master's degree in Business Management. I am an active duty Chief Warrant Officer in the USCG, and prior to my current assignment I was a Coast Guard Store

Keeper (SK), at which I attained the rank of E7 (Chief). My duties as an SK involved use of Government Purchase Cards, accounting, and government purchase management. I worked at several units where I was nearby or partnered with USCG members in the Yeoman (YN) rate, and have good understanding for their roles and responsibilities in the USCG.

3. I submit this affidavit in support of a criminal complaint and arrest warrant charging MICHAEL A. JARBECK with wire fraud in violation of 18 U.S.C. § 1343. As detailed below, JARBECK knowingly devised a scheme and artifice to defraud to obtain money by means of materially false and fraudulent pretenses. To execute this scheme and artifice, on or about February 15, 2018, JARBECK transmitted and caused to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds in the Eastern District of Virginia. Specifically, JARBECK initiated an electronic communication between an ATM located outside the Eastern District of Virginia and a data center located in Chantilly, Virginia, within the Eastern District of Virginia, and authorized the withdrawal of approximately $1,012.75 from a Chief Petty Officers Association account at Pentagon Federal Credit Union.

4. The information below is based on my personal knowledge, training and experience, information from interviews, and the review of documents and materials. It does not include all information known to me or the United States.

5. JARBECK is an E-9 (Master Chief) in the Coast Guard. This is the second highest enlisted grade in the Coast Guard. (There is only one E-10 in the Coast Guard.) For most of JARBECK's career, he has served as a YN. YNs are specialists who deal with administrative functions in the Coast Guard such personnel, pay, travel, and other benefits. The YN Mission Statement reads: "We are a team of dedicated professionals who specialize in helping people and commands by providing them information, guidance, and administrative services, concerning pay,

travel and transportation entitlements, benefits and human resources management." YNs are known in the USCG to be astute record managers for important financial, policy, and personal record libraries. One of JARBECK's latest assignments was to the policy division where he was responsible for providing training and guidance pertaining to entitlements for the rest of the USCG.

6. Beginning in 2014, and continuing through 2019, JARBECK served as the Treasurer for the Chief Petty Officers Association (CPOA), DC Chapter. CPOA is a war veterans, not-for-profit organization. It is designated a 501(c)(19) per the Tax Guide for Veteran's Organizations. CPOA's goal is to advance a variety of military and veterans issues through community service, scholarships, and fundraising. The DC Chapter (CPOA DC) operated out of USCG Headquarters, St. Elizabeth's Campus, Washington, D.C. Upon taking this position, CPOA officers provided JARBECK with instructions on how to balance accounts and how to spend funds from the account.

7. CPOA DC maintains its bank accounts at Pentagon Federal Credit Union ("PenFed"), which is headquartered in McLean, Virginia. All of PenFed's servers are located in Chantilly, Virginia, and all pin transactions using a PenFed account route through Chantilly, Virginia, within the Eastern District of Virginia.

8. Based on my interviews with the current CPOA DC president, the National CPOA President, the CPOA DC Treasurer after JARBECK, and several other CPOA Chapters' Officers, I learned that CPOA has strict rules and procedures for spending CPOA money. Specifically, I learned that the use of cash and cash withdrawals from CPOA bank accounts is rarely done. CPOA funds may only be expended after a CPOA vote during a meeting, or, if not possible, through a vote by email.

9. While JARBECK served as Treasurer, he was the only person who held a debit/check card for the CPOA DC accounts.

10. JARBECK left this position at CPOA DC after a new Treasurer was elected in the summer of 2019. After JARBECK was relieved as Treasurer, new CPOA Officers conducted a review of the CPOA accounts and noted many suspicious purchases and withdrawals. Further investigation revealed that during the time JARBECK served as CPOA Treasurer, there was approximately $59,628.78 in questioned and unauthorized purchases, branch withdrawals, and ATM withdrawals.

11. During the period JARBECK severed as CPOA Treasurer, there were approximately $7,026.27 in questionable and unauthorized purchases made using the CPOA debit card at places including Krispy Kreme Doughnuts, The Home Depot, and several gas stations located near JARBECK's residence. There were approximately $45,526.52 in questionable and unauthorized branch withdrawals, and approximately $7,076.00 in questionable and unauthorized ATM withdrawals. For example:

   a. On or about March 14, 2017, a check card withdrawal for $164.00 was made at 100 Brumbaugh Street, San Juan, Puerto Rico. This location appears to be a Sheraton Hotel near the San Juan Cruise Port Terminal. Official USCG travel records indicated that JARBECK was on official government travel to Puerto Rico during this timeframe. JARBECK's official USCG travel did not pertain to the CPOA.

   b. On or about April 17, 2017, a check card withdrawal of $43.50 was made at 25 Carlisle Street, Hanover, Pennsylvania. This location is the Bank of

       Hanover and Trust Company, which was approximately 12 miles south of JARBECK's residence at the time of the transaction.

    c. On or about October 24, 2017, a check card withdrawal of $223.50 was made at 1442 Bannister Street, York, Pennsylvania. This location is a Sovereign Bank ATM, which is approximately a half-mile mile from JARBECK's residence at the time of the transaction.

    d. On or about March 16, 2017, there were CPOA withdrawals in Florida and North Carolina while JARBECK was on USCG duty trips to those locations, unrelated to CPOA.

    e. On or about November 6, 2018, a check card withdrawal of $220.00 was made at an M&T Bank ATM on Leader Heights Road, in York, Pennsylvania, which is approximately six miles from JARBECK's residence at the time of the transaction.

    f. Approximately $11,761.07 in customer check/debit card withdrawals were made from Coast Guard Headquarters, JARBECK's place of work.

12. No documentation was located to support the suspicious charges and no member of CPOA recalled a vote to approve them. The CPOA President at that time did not recall any instance where an ATM withdrawal was authorized or discussed during the period in which JARBECK was the Treasurer of CPOA DC.

13. A forensic audit was conducted that compared JARBECK's personal bank account to the CPOA account. This accounting revealed several withdrawals from the CPOA account that corresponded to deposits of similar amounts into JARBECK's personal bank account on the same day or in the same week. There was also a pattern of overdraft fees in JARBECK's personal bank

account which correlated to CPOA bank account withdrawals, followed by deposits into JARBECK's personal bank account. For example:

    a. On or about February 15, 2018, JARBECK made a $1,012.75 withdrawal from a COPA account. The same day, JARBECK made a $1,000.00 deposit to his personal bank account. As noted in paragraph 3, this transaction occurred as a result of an electronic communication between an ATM located at 1511 Kenneth Road, York, Pennsylvania, outside the Eastern District of Virginia, and a data center located in Chantilly, Virginia, within the Eastern District of Virginia.

    b. On or about May 22, 2018, JARBECK made a $323.50 withdrawal from a COPA account at 1416 Baltimore Street, Hanover, Pennsylvania. On that same day and at the same location, JARBECK made two ATM deposits of $320.00 and $70.00 into his personal bank account.

    c. On or about April 26, 2019, JARBECK made an $850.00 withdrawal from a COPA account. The next day, on or about April 27, 2018, he deposited $800.00 into his personal bank account.

14. According to the incoming CPOA Officers, prior to JARBECK being relieved as CPOA Treasurer, JARBECK was difficult to get ahold of and waited until near the time when he was about to retire from the USCG to pass-down the information to the new Treasurer. The incoming President of CPOA DC said that after JARBECK discovered the new CPOA Officers were suspicious of the transactions made during the time he was the Treasurer, JARBECK made a statement to the effect of "you only have so much time to charge me." Based on my training and experience, and the context, I believe that this was a reference to JARBECK's impending

retirement from the USCG and the difficulty of thereafter charging him with a violation of the Uniform Code of Military Justice.

15. Special Agents interviewed JARBECK's ex-wife. She informed investigators about an incident in which she confronted JARBECK about cash that he had on him. JARBECK told her that he had borrowed some cash from the CPOA.

16. Special Agents interviewed JARBECK. When asked about the use of cash, he said that he would donate CPOA's funds without a vote. JARBECK said he withdrew cash to give to various organizations including schools, Toys-for-Tots, and jacket programs, but did not provide any details or specific examples. JARBECK acknowledged that it was not his money to give.

17. JARBECK said that "pretty much" all the money he took out from ATMs at Walter Reed was then donated to charities on-site. When asked to provide details of any of the fundraisers he donated to at Walter Reed, he could not provide any examples.

18. JARBECK said that he did not account for the money very well. He said that he had used a spreadsheet, but he deleted that spreadsheet. When asked how that occurred, JARBECK advised that when he was getting ready to retire, he was instructed to delete his profile from the computer in order to ship the computer to another unit in the Coast Guard. Due to the peculiarity of this claim, it was investigated. JARBECK's prior supervisor advised that he did not tell JARBECK to delete anything. The telecommunications coordinator for JARBECK's former officer advised that she did not instruct JARBECK to delete anything on the computer. She instructed JARBECK to leave his computer at his desk and to turn in any other electronic devices to her.

19. During the course of my investigation, I learned that JARBECK has been previously disciplined by USCG for misuse of his government travel card and claiming unauthorized dependents on a Permeant Change of Station (PCS) move travel claim.

## CONCLUSION

20. Based on the foregoing, I submit that there is probable cause to believe that that on or about February 15, 2018, in the Eastern District of Virginia and elsewhere, JARBECK transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce, any writings, signs, signals, pictures, and sounds, namely, an electronic communication between an data center in the Eastern District of Virginia and an ATM located outside of Virginia, to authorize the withdrawal of approximately $1,012.75 from a CPOA account held at Pentagon Federal Credit Union in violation of 18 U.S.C. § 1343.

Christopher Sims
Special Agent
Coast Guard Investigative Service
Washington Field Office
Alexandria, VA

Subscribed and sworn to by telephone
in accordance with Fed. R. Cri. P. 4.1
this ___ day of February, 2021.

Digitally signed by Michael S. Nachmanoff
Date: 2021.02.02 13:02:20 -05'00'

The Honorable
United States Magistrate Judge